No. 19,943.

L. M. HICKS, *Plaintiff*, v. W. E. DAVIS, as State Auditor, etc., *Defendant*.

SYLLABUS BY THE COURT.

1. LEGISLATURE—*Acts Unassailable When Within Limits of the Constitution.* Rule followed that within the limits of the constitution the legislature is supreme in its own sphere, and its discretion can not be challenged or reviewed by the executive or judicial departments of the state government.

2. SAME—*Grain Inspector—Appropriation for Expenses—Valid.* When the legislature by a regular statutory enactment makes an appropriation to pay a person a sum of money under a claim for traveling expenses while in the state's service, the legal, equitable and moral aspects of the claim concern the legislature alone, and can not be reviewed by the auditor of state.

3. SAME — *Appropriations — Grain Inspection — Power of Legislature.* The petitioner worked in the state grain department, at Kansas City, for three years and four months, at a salary of $60 per month. During the period of his employment there was no statutory provision for his traveling expenses. The legislature of 1913 appropriated a sum of money to be paid out of the "grain inspection fee fund" to reimburse the petitioner for traveling expenses while he was employed by the state. *Held*, that the legislature had full and exclusive control of the subject, and the law pertaining thereto leaves no duty imposed on the auditor of state except the ministerial one of executing the expressed will of the legislature.

4. SAME—*Duty of Auditor upon Presentation of Voucher.* When a lawful appropriation has been made by the legislature and the person entitled thereto presents a voucher therefor in due form, and when

Hicks v. Davis.

upon the auditor's refusal to honor the voucher the claimant seeks redress in court, he can not be deprived of relief because of the termination of the fiscal year and the closing of the year's accounts before his action is finally adjudicated.

5. STATUTE—*Amendment—How Made.* An act of the legislature which attempts expressly to amend or repeal a prior act must conform to the procedure prescribed by the constitution. (Const., art. 2, § 16.)

6. SAME—*Attempted Amendment to Statute Invalid.* In the body of a section of a statute enacted by the legislature of 1913 was an item appropriating a sum of money to the petitioner. The legislature of 1915 sought to abrogate that item by an act purporting to repeal the act of 1913 "in so far as it relates to item 106 of section 1 of said chapter." *Held,* that the later act wholly disregarded section 16 of article 2 of the constitution and is consequently void.

Original proceeding in mandamus. Opinion filed February 12, 1916. Writ allowed.

*W. A. Snook,* of Kansas City, for the plaintiff.

*S. M. Brewster,* attorney-general, and *John L. Hunt,* assistant attorney-general, for the defendant.

The opinion of the court was delivered by

DAWSON, J.: The plaintiff asks for a writ of mandamus to compel the auditor of state to draw a warrant in his favor against the "state grain inspection fee fund" in the custody of the state treasurer, pursuant to an appropriation item in "an act making appropriation to pay sundry claims against the state," which took effect on March 19, 1913. (Laws 1913, ch. 61.) The item reads:

"Item 106. To L. M. Hicks, for money expended for traveling expenses while in employ of State Grain Inspection Department from February, 1909 to June 11, 1912, $384.60, to be paid out of the state grain inspection fee fund."

The petition and answer alike show that the plaintiff was employed as a helper in the state grain inspection department at Kansas City from February, 1909, until June, 1912. His salary in 1909 and 1910 and until the enactment of chapter 199 of the Laws of 1911 was fixed by the statute at $60 per month. (Gen. Stat. 1909, § 3337.) There was no statute authorizing any allowance for expenses. Chapter 199 of the Laws of 1911, amending section 3337 of the General Statutes of 1909, pro-

vided that the chief inspector, subject to the approval of the grain-grading commission, might fix the salaries of his subordinates in any sum not in excess of the salaries prescribed by the older act. The lawful salary of the petitioner therefore continued to be $60 per month until he left the state's service in 1912. The later act did not contemplate or provide for traveling expenses for such employees as the petitioner.

The auditor of state contends that the state owed the petitioner nothing for expenses, either legally or morally, at the time the legislature made the appropriation under which the plaintiff now claims. The auditor also calls attention to chapter 14 of the Laws of 1915, which purports to repeal the item under which the petitioner claims.

The auditor asserts that the "traveling expenses" for which the legislature provided in the appropriation item were only incurred by the petitioner between his home and his place of employment, both in Kansas City.

1. It is elementary law that the government of Kansas is conferred upon three coördinate departments—the legislative, the executive and the judicial. Each is supreme within its own sphere, subject only to our constitutional limitations. Neither can trench upon the field of the other. The legislature makes the laws. The executive, of whom the auditor of state is one of the most important officers, must execute and administer the laws. The function of the judiciary is to interpret, explain and to apply the laws to controversies concerning rights, wrongs, duties and obligations arising under the laws.

How far may an executive officer like the auditor of state look beneath the surface of a legislative enactment? His counsel cite some decisions to the effect that where there is no legal, equitable or moral claim upon the state's bounty, an appropriation making a mere gift of money is void. The chief limitations upon the power of our legislature to dispose of public funds or other state property are these: (a) Free governments are founded by the people for their equal protection and benefit, and special privileges granted by the legislature may likewise be revoked by it. (Bill of Rights, § 2.) (b) Hereditary emoluments must not be granted. (Bill of Rights, § 19.) (c) Restrictions on change of salaries of con-

stitutional officers, members of the legislature and the judiciary. (Const., art. 1, § 15; art. 2, § 3; art. 3, § 13.)   (*d*) The preservation and use of the school funds.   (Const., art. 6, §§ 3-8.)   (*e*) Limiting and regulating the state's indebtedness.   (Const., art. 11, §§ 5-7.)   (*f*) "No money shall be drawn from the treasury, except in pursuance of a specific appropriation made by law, and no appropriation shall be for a longer term than two years." (Const., art. 2, § 24; art. 11, § 3.)   (*g*) State funds can not be devoted to internal improvements. (Const., art. 11, § 8.)

Within these limitations, the control and disbursement of the revenues of the state are subject to the will of the legislature, unfettered by interference by the executive or the judiciary.   And in scrutinizing this statute, we must proceed on the assumption that it is valid unless it contravenes some express inhibition of the constitution or one necessarily implied from some express affirmative provision of that instrument. (*Prouty v. Stover, Lieut. Governor*, 11 Kan. 235; *The State v. Weiss*, 84 Kan. 165, 168, 113 Pac. 388; *Winters v. Myers*, 92 Kan. 414, 420, 421, 428, 140 Pac. 1033.)

2.   Conceding that the legislature can not make a grant of funds to a private citizen where there is no legal, equitable or moral claim thereto (*Winters v. Myers*, supra; *Loan Association v. Topeka*, 87 U. S. 655, 664), who is to determine such question?   In the old days, when special laws were frequently enacted notwithstanding the constitutional provision that "in all cases where a general law can be made applicable, no special law shall be enacted" (Const., art. 2, original § 17), it was said by the first chief justice of the state:

"EWING, C. J.:   .   .   .   The legislature must necessarily determine whether their purpose can or can not be expediently accomplished by a general law.   Their discretion and sense of duty are the chief, if not the only, securities of the public for an intelligent compliance with that provision of the constitution.   Whether we could, in any conceivable case presenting a flagrant abuse of that discretion, hold a private law invalid as contrary to that provision of the constitution, we need not here decide, but we would certainly not hold such a law invalid merely because it would, in our opinion, have been possible to frame a general law under which the same purpose could have been accomplished." (*State of Kansas, ex rel. Johnson, v. Hitchcock*, 1 Kan. 178, 185.)

In *Beach v. Leahy, Treasurer*, 11 Kan. 23, Mr. Justice

Brewer, in discussing the challenged validity of a special law, said:

"It may be conceded that this is a special law. . . . It is evident, also, that the result could be accomplished by a general law. . . . Why this distinction was made we do not know, and there is nothing in the record to enlighten us thereon. We may imagine many reasons, but it is useless to speculate. It is enough . . . that there may have been good and sufficient reasons." (pp. 26, 27.)

To the same effect were *Hughes v. Milligan,* 42 Kan. 396, 399, 22 Pac. 313, and *The State, ex rel., v. Lewelling,* 51 Kan. 562, 565, 33 Pac. 425.

Although the validity of special legislation may now be judicially reviewed under the amendment of 1906 (Const., art. 2, § 17; *Anderson v. Cloud County,* 77 Kan. 721, 95 Pac. 583), yet the general principle stated in the foregoing cases as to other matters within legislative control, and not thus hampered by a judicial review, is as potent and logical now as ever. The courts can not impeach the legislative discretion, neither can an executive officer. Paraphrasing the language of Justice Brewer, we must say it is enough that the petitioner presented to the legislature a bill for traveling expenses while in the service of the state, that presumably the legislative committee and the legislature considered the claim, found it reasonable and proper, and supported by some moral claim to the state's justice, and regularly and lawfully ordained that it be paid.

If we might take judicial cognizance of the enormous area of Kansas City, the metropolis of this state, with its far-flung suburbs, its hundreds of miles of railroad switch tracks, side-tracks, and warehouse and elevator tracks, its public and private elevators towering to the sky, some of them at long distances from others, it would probably be no more difficult a task to convince us than it was to convince the legislature that it was not only proper but wise and economical for the petitioner in pursuing his business of grain inspection to use any reasonable and available means of transportation to reach the various places where his services were required. Apparently the legislature so determined, and its determination can not be gainsaid.

It must be obvious that if the theory of the auditor is correct, it would be bound to apply to all cases where public of-

ficers and their subordinates had incurred expenses not previously authorized by the legislature. Of course no officer, great or small, may lawfully obligate the state to pay any sum whatsoever unless there is a statute therefor, and the legislature in its discretion might refuse to compensate the state's servants for any and all such expenses. But suppose the auditor of state, or the secretary of state or any one of the state's official boards and commissions were dragged into a lawsuit, the expenses of which could not be borne by their limited contingent funds. Would it be said that, since the legislature had made no provision in advance for the payment of such expenses, and the officers and commissioners had accepted their official positions with their attendant advantages and disadvantages at a definitely fixed compensation, they could not afterwards be reimbursed by the legislature? The case at bar is of little consequence, but the principle involved touches the fundamental sovereignty of the state.

Moreover, the legislature was not even technically giving away the state's general funds when it appropriated this particular item. It decreed that it should be paid out of the grain inspection fee fund—a fund exacted from the owners of grain solely for the proper expenses of inspection, and not justifiably exacted from them for any other purpose.

3. And this presents possibly another question. The auditor suggests that there is no money in the grain inspection fee fund to pay this claim. We assume that this is because the books for the fiscal year ending June 30, 1915, have been closed, and that any balances then existing in that fund have reverted to the general revenue funds of the state. But the books were open when the petitioner filed this action. That crystallized the status of the fund as of that date, and if there were moneys in the grain inspection fee fund at that time, the closing of the books will not bar the petitioner. There is no magic in bookkeeping. Books which have been closed in derogation of a lawful outstanding claim which had been provided for by the legislature must be reopened and the claim paid and the proper entries made to recite the pertinent facts.

4. Many objections are made by counsel for the petitioner to chapter 14 of the Laws of 1915, but it is needless to follow his somewhat abstruse and complicated philosophy. The con-

stitution plainly instructs the legislature as to its procedure when it deliberately sets out to amend or repeal a specific statute or a section of a statute. Of course, when the legislature is legislating directly on any subject, it may close its eyes, and frequently does, to all earlier legislation, and a later act, as the last expression of the legislative will, will supersede and repeal by implication all inconsistent earlier legislation. But when the legislature has a direct and special purpose in view, as it had when it attempted to revoke and expunge item 106 in the act of 1913, it was bound to amend the section in which it was incorporated. This it could only do by rewriting the section to suit its determination. In congress, and perhaps in some of the states, the method of repeal attempted here would be valid. It is not so in Kansas. Article 2 of section 16 of the constitution of Kansas provides:

"No law shall be revived or amended unless the new act contain the entire act revived or the section or sections amended, and the section or sections so amended shall be repealed."

The section of the act carrying the item appropriated to the petitioner (Laws 1913, ch. 61, § 1) contains many matters which the legislature of 1915 had no intention to meddle with. Therefore the only way to eliminate the item appropriated for petitioner was to rewrite the section. So says the constitution, and consequently the act of 1915 is plainly, palpably and utterly void.

The writ is allowed.