No. 39,329

THE STATE OF KANSAS, on the Relation of HAROLD R. FATZER, Attorney General, and DONALD E. MARTIN, County Attorney of Wyandotte County, *Plaintiff*, v. THE REDEVELOPMENT AUTHORITY OF KANSAS CITY, KANSAS, and THE CITY OF KANSAS CITY, KANSAS, *Defendants*.

(269 P. 2d 484)

Opinion filed April 10, 1954.

*Donald E. Martin,* county attorney, of Wyandotte county, argued the cause, and *Harold R. Fatzer,* attorney general, *Paul E. Wilson,* assistant attorney general, and *Newell A. George,* assistant county attorney, of Wyandotte county, were with him on the briefs for the state of Kansas.

*J. E. Schroeder,* and *Joseph H. McDowell,* both of Kansas City, argued the cause, and *Harry G. Miller, Jr.,* and *Elmer C. Jackson, Jr.,* both of Kansas City, were with them on the briefs for the Redevelopment Authority of the City of Kansas City.

*C. W. Brenneisen, Jr.,* and *Joseph Lynch,* both of Kansas City, were on the briefs for the city of Kansas City.

*William Overton, Arthur J. Stanley, Jr., Jerome S. Koehler, Harold Harding,* and *William Boyce,* all of Kansas City, as *amici curiae.*

The opinion of the court was delivered by

WERTZ, J.: This is an original proceeding in quo warranto, brought by the state of Kansas on the relation of the attorney general, and the county attorney of Wyandotte county (hereinafter referred to as the State), against the Redevelopment Authority of Kansas City, Kan., and the city of Kansas City (hereinafter referred to as the Authority, and the City), for the purpose of testing the constitutionality of chapter 106 of the Laws of 1953 (G. S. 1953 Supp., ch. 17, art. 47), known as the Redevelopment Authority Law.

The pertinent portion of the petition alleges that the mentioned law provides in general for the creation of redevelopment authorities in certain cities of the first class having the duties, liabilities, exemptions and powers prescribed in the act, for the purpose of acquiring and clearing substandard and insanitary areas, and redeveloping such areas in the interests of public health, safety and morals; that the Authority purports to be a body corporate and politic created and existing by virtue of the provisions of that law, and has by resolution duly approved the exercise by the Authority of the powers granted; that the Authority has duly organized itself and begun operations in specific particulars therein set out, and incurred obligations which will be paid for by moneys provided by the City from public funds; that said law authorizes the City to aid and co-operate with the Authority in undertaking and carrying out redevelopment projects, and the City will, unless ousted or enjoined, furnish the Authority services and other things of value and will contribute to the Authority public funds raised by general taxes; that the Authority and the City are without right to proceed under the law for the reason that it violates article 2, section 17, of our state constitution in that it is a special law where a general law could have been made applicable, and that under the act as amended it is applicable only to the cities of the first class having a population of more than 125,000, and in which there is a townsite which has been incorporated for more than ninety years, and is therefore applicable only to the city of Kansas City. The petition further alleges that the act is in violation of our state constitution on other grounds, which need not be detailed here in view of our conclusion reached on plaintiff's first contention as related. It is further alleged that the Authority and the City are acting in an unconstitutional and illegal manner and, unless they are ousted and enjoined by this court, they will proceed to so act.

The State's prayer for relief seeks to restrain and enjoin the Authority and City from proceeding further with the preparation and adoption of redevelopment plans under the mentioned law, and that the act be declared unconstitutional; that the City and Authority are without power to perform any act thereunder, and that the Authority be ousted of all rights and privileges as a body corporate.

The answer of the Authority and the City admits plaintiff's allegations as related, but denies the act is unconstitutional, and alleges that they have been and are now undertaking to exercise the powers

granted them under the provisions of the law, and that the mentioned law is a valid and constitutional enactment of the legislature of Kansas, and asserts that they are entitled to proceed to exercise the powers therein provided.

We shall discuss only those matters necessary for the disposition of the State's contention that the act is unconstitutional in that it violates article 2, section 17, of our state constitution, and that the Authority and City are without power to perform under the statutes. We do not deem it necessary to make a complete and exhaustive review of the statute in question. Quotations from the statute will not be complete paragraphs or sentences, but only sufficient to discuss the question presented.

The title of the 1953 act now under consideration reads in part as follows:

"An Act to provide for the clearance of substandard and insanitary areas for redevelopment in accordance with plans approved by the governing body of certain cities; to create for this purpose a public body corporate and politic, to be known as the redevelopment authority, in certain cities of the first class in this state;"

The remainder of the title, broadly stated, is a table of contents of the powers granted by the act.

Section 1 of the act provides that it shall be cited as "redevelopment authority law." Section 2 sets forth the purpose of the act and reads:

"*Findings and declaration of necessity.* It is hereby found and declared that there exist in certain cities of the state, substandard and insanitary areas (as herein defined) which constitute a serious and growing menace, injurious and inimical to the public health, safety, morals and welfare of the residents of the state; that the existence of such areas contributes substantially and increasingly to the spread of disease and crime, necessitating excessive and disproportionate expenditures of public funds for the preservation of the public health and safety, for crime prevention, correction, prosecution, punishment and the treatment of juvenile delinquency and for the maintenance of adequate police, fire and accident protection and other public services and facilities constitutes an economic and social liability, substantially impairs or arrests the sound growth of cities and retards the provision of housing accommodations; that this menace is beyond remedy and control solely by regulatory process in the exercise of the police power and cannot be dealt with effectively by the ordinary operations of private enterprise without the aids herein provided; that the elimination of substandard or insanitary conditions, the acquisition and preparation of land necessary to the redevelopment of substandard or insanitary areas and its sale or lease for redevelopment in accordance with comprehensive plans and redevelopment plans of cities and any assistance which may be given by any public body in connection therewith, are public uses and purposes for which

public money may be expended and private property acquired; and that the necessity in the public interest for the provisions hereinafter enacted is hereby declared as a matter of legislative determination."

Section 3 of the act is made up of many definitions of words used in the act. Subsection (b) defines the word "city" and reads:

" 'City' shall mean any city of the first class in the state having a population of more than one hundred twenty-five thousand (125,000) and in which there is a townsite which has been incorporated for more than ninety (90) years."

Section 4 provides for the creation of a redevelopment authority; section 5, the powers of an authority; section 6, the preparation and approval of redevelopment plans; section 7, the disposal of property in a redevelopment project area; section 8, the right of eminent domain; sections 9, 10 and 11 provide for the issuance of bonds, powers in connection therewith, and the rights of obligee; section 12 provides for exemption from taxes and from levy and sale by virtue of execution; section 13 provides for co-operation by public bodies; section 14, for grant of funds by city; section 15 has reference to title of purchaser; section 16, separability of provisions; section 17, for inconsistent provisions; section 18, additional conferred powers, and section 19 repeals the "urban redevelopment law" (G. S. 1949, ch. 17, art. 47, and G. S. 1951 Supp., ch. 17, art. 47).

The controlling question in this case is whether the act violates article 2, section 17, of our constitution, which reads:

"All laws of a general nature shall have a uniform operation throughout the state; and in all cases where a general law can be made applicable, no special law shall be enacted; and whether or not a law enacted is repugnant to this provision of the constitution shall be construed and determined by the courts of the state."

Prior to its amendment in 1906 the above section did not contain the last quoted clause, and whether a general law could be made applicable was early held to be a question for the legislature to determine. In one of the first cases coming before this court after the amendment of 1906 (*Anderson v. Cloud County*, 77 Kan. 721, 95 Pac. 583), we held that the section as amended took from the legislature the right to determine finally when a general law could be made applicable, and devolved upon the courts the duty to determine it as a judicial question without regard to any legislative assertion on the subject. We said in that case it was the duty of the courts, when the question arises, to apply the established tests to determine whether an attempted classification by the legislature is

a proper one, based upon some apparently natural reason suggested by necessity and occasioned by a real difference in the situation and circumstances of the class to which it applies, or whether it is arbitrary or capricious and excludes from its provisions localities to which it would naturally apply, except for its own limitations. It has been held that for an act to have uniform operation throughout the state, it need not affect every individual, class or community, but that it is competent for the legislature to classify and adopt a law general in its nature to a class, but the classification must be a natural and not a fictitious one. While the legislature has power to enact general laws applicable only to a portion of the state, or a community, or a certain class, if they operate uniformly on all members of the class created, the classification must be a natural one resting upon a genuine and substantial basis. The legislature has power to pass laws which apply to and operate uniformly on members of the class, but the classification made must be a natural and genuine one, not arbitrary or fictitious, and based upon distinctions which have a reasonable and substantial relation to the subject matter involved. A law to be regarded as general must embrace all and exclude none whose conditions and wants render such legislation equally necessary or appropriate to them as a class. A law may be special by being so restricted as not to include all of the subjects of a class, and also where it excludes subjects of a class from its operation. (*Redevelopment Authority of the City of Kansas City v. State Corp. Comm.*, 171 Kan. 581, 588-590, 236 P. 2d 782, and authorities therein cited.)

Our legislature first enacted the Urban Redevelopment Act in 1943 (G. S. 1949, 17-4701 to 17-4723). That act provided for the creation of redevelopment corporations to carry out the general purpose of clearing and rehabilitating substandard, insanitary and blighted areas in cities of the first class, having a population of over 110,000. This act was amended by chapter 206 of the Laws of 1951. (G. S. 1951 Supp., 17-4703 to 17-4721.) The act as amended created a redevelopment authority and conferred powers upon it to accomplish the same purposes and objectives as the redevelopment corporation. The amendment applied to cities of the first class having a population of more than 125,000 and less than 150,000. At the time of the enactment of the 1951 amendment, Kansas City was the only city falling within the established classification. Shortly after the amendment became effective, Kansas City proceeded

under the provisions and authority of the act as amended. An action challenging the constitutionality of the act was immediately instituted in this court and we held the attempted classification by population was not a natural one based upon distinctions which have a reasonable, substantial relation to the subject matter, but was arbitrary, fictitious and capricious, and the act as amended was a special act where a general act could have been made applicable, and that it contravened article 2, section 17, of our state constitution. (*Redevelopment Authority of the City of Kansas City v. State Corp. Comm.*, supra.)

Following the decision in the mentioned case, the legislature in 1953 repealed the Urban Redevelopment Act of 1943, as amended in 1951, and enacted chapter 106, aforementioned, as a new Redevelopment Authority Act, now being challenged in this proceeding. The title of the 1953 act clearly provides for clearance of substandard and insanitary areas in certain cities of the first class. By section 2 of the act the legislature definitely provided the purpose for creating the redevelopment authority law, and declared that there existed in certain cities substandard and insanitary areas which constituted a serious and growing menace injurious to the public health, safety, morals and welfare of the people of the state. It is clear that the legislature recognized such conditions existed in cities of the first class which were laid out and townsites organized many years ago, when streets were narrow, lighting conditions inadequate, and buildings were constructed closely together in small areas, such buildings becoming old, dilapidated and insanitary, and in some instances were fire hazards, and that it would be to the best interests of all that they be cleared and the property be redeveloped. However, in spite of this worthy cause, recognized by the legislature by section 3 they limited the applicability of the act by defining the word "city" to mean a city of the first class having a population in excess of 125,000, and in which there was a townsite which had been incorporated for more than ninety years, thereby making the act applicable to Kansas City alone, and innoculating the act with the same fatal disease of special legislation as was dealt with in *Redevelopment Authority of the City of Kansas City v. State Corp. Comm.*, supra.

We observe that three conditions must be met if a municipality is to qualify under the provisions of the act: (1) it must be a city of the first class, (2) it must have a population in excess of 125,000,

and (3) in which there is a townsite which has been incorporated for more than ninety years.

The ten oldest and largest cities of the first class in Kansas, their population and date of townsite incorporation are as follows:

| City | Population | Date of townsite incorporation |
|------|-----------|-------------------------------|
| Wichita | 192,182 | 1871 |
| Kansas City | 126,886 | 1859 |
| Topeka | 82,734 | 1857 |
| Hutchinson | 34,771 | 1872 |
| Salina | 29,102 | 1859 |
| Atchison | 12,568 | 1855 |
| Coffeyville | 17,960 | 1872 |
| Lawrence | 19,863 | 1858 |
| Leavenworth | 21,095 | 1855 |
| Pittsburg | 22,108 | 1879 |

Analyzing the foregoing table with section 3 of the act in mind, we find two cities with a population of more than 125,000, *i. e.*, Wichita and Kansas City, and of these cities, Wichita is eliminated for the reason it does not have an existing townsite of more than ninety years. The cities of Topeka, Atchison, Lawrence, Salina and Leavenworth qualify with a townsite of more than ninety years but are eliminated by reason of population. A further analysis will disclose while many of the cities have townsites existing many years, and are now and may be confronted with substandard and insanitary areas constituting a growing menace, injurious to the public health, safety, morals and welfare, they are excluded from the act by reason of population requirement. While there is a faint possibility certain of the cities mentioned will grow into the population requirement of the act, it is improbable that they will do so. Although the act states the prescribed conditions exist in cities of the first class, the limitations provided therein are effective and available only to Kansas City, and other cities of the first class are excluded therefrom.

No better discussion of the problems involved and the legal precedents to be considered in this case can be made than those contained in the recent exhaustive decision written by Mr. Justice Thiele for this court in *Redevelopment Authority of the City of Kansas City v. State Corp. Comm.*, supra, in which we had under consideration the same constitutional provision as applied to the former Urban Redevelopment Law of 1943 as amended, and re-pealed by the act of 1953 now under consideration, wherein a dis-

cussion of the facts and analyses of the applicable authorities are made, construed and applied. Therefore, in order to avoid reiteration, the decision in that case is adhered to and made a part of this opinion.

We conclude the attempted classification by population of a city in which there is a townsite which has been incorporated for more than ninety years, is not a natural one based upon distinctions which have a reasonable and substantial relation to the subject matter, but is arbitrary, fictitious and capricious; that the act is a special act where a general act could have been made applicable, and contravenes article 2, section 17, of the state constitution.

Judgment is rendered for the plaintiff.

It is so ordered.