No. 40,184

THE STATE OF KANSAS, on the Relation of HAROLD R. FATZER, Attorney General (JOHN ANDERSON, JR., substituted), and DONALD E. MARTIN, County Attorney of Wyandotte County, *Plaintiff,* v. URBAN RENEWAL AGENCY OF KANSAS CITY, KANSAS, and THE CITY OF KANSAS CITY, KANSAS, *Defendants.*

(296 P. 2d 656)

Opinion filed April 28, 1956.

*Donald E. Martin,* County Attorney, argued the cause, and *John Anderson, Jr.,* Attorney General, *Paul E. Wilson,* Assistant Attorney General, and *Newell A. George,* Assistant County Attorney, were with him on the briefs for the plaintiff.

*David W. Carson* and *J. W. Mahoney,* both of Kansas City, argued the cause, and *John K. Dear, Ernest N. Yarnevich, Myles C. Stevens* and *C. W. Brenneisen, Jr.,* all of Kansas City, were with them on the briefs for the defendants.

The opinion of the court was delivered by

PRICE, J.: This is an original action in quo warranto to oust defendants from proceeding under the provisions of Chapter 86, Laws of 1955 (G. S. 1955 Supp. 17-4742-4761), commonly known as the Urban Renewal Law.

Allegations of the petition and answer will not be detailed. It is sufficient to say it is contended by plaintiff, and denied by defendants, that the act violates certain provisions of our constitution and is therefore unconstitutional and void. And neither do we consider it necessary to set out in full the act which covers over twenty-one pages of the 1955 Session Laws and nine pages of the

statute book. Reference will be made to sections of the act.

In general, it may be said that the over-all purpose of the act, as expressed in the declarations of necessity found in section 2 thereof, is to enable certain cities to take steps to eliminate slum and blighted areas which constitute a serious and growing menace injurious of the public health, safety, morals and welfare of the residents of the state, the elimination of which is declared to be a matter of public policy.

Section 19 limits the application of the act to cities having a population of more than 75,000. It is conceded that Wichita, Kansas City and Topeka are the only cities to which the act presently applies.

Plaintiff's first contention is that the population limitation constitutes special legislation prohibited by article 2, section 17, of the constitution, which reads:

"All laws of a general nature shall have a uniform operation throughout the state; and in all cases where a general law can be made applicable no special law shall be enacted; and whether or not a law enacted is repugnant to this provision of the constitution shall be construed and determined by the courts of the state: *Provided,* The legislature may designate areas in counties that have become urban in character as 'urban areas' and enact special laws giving to such counties or urban areas such powers of local government and consolidation of local government as the legislature may deem proper."

In passing, it is to be noted that this section was amended by popular vote in 1954 by the addition of the language in the *proviso.* For purposes of this case, however, we need not discuss whether the addition of the *proviso* has any bearing on the question before us, and we therefore proceed to a discussion of the matter as though the section had not been amended.

The validity of similar legislation has been before this court in *Redevelopment Authority of the City of Kansas City v. State Corp. Comm.,* 171 Kan. 581, 236 P. 2d 782, and *State, ex rel, v. Redevelopment Authority of Kansas City,* 176 Kan. 145, 269 P. 2d 484. In each of those cases legislation then under consideration was held to be a special law where a general law could have been made applicable, and therefore unconstitutional. We consider it unnecessary to review in detail what was said and held in those cases, and reference is made to the opinions for the facts, questions involved, and reasons for the decisions.

In the first mentioned case it was held that for an act passed by the legislature to have uniform operation throughout the state, as

required by the mentioned provision of the constitution, it need not affect every individual, class or community; that it is competent for the legislature to classify and adopt a law general in its nature to the class created, provided the classification so made be a natural one and not arbitrary, fictitious or capricious, and that ordinarily a classification based upon population is sufficient to satisfy the constitutional requirement provided it is based upon distinctions which have a reasonable and substantial relation to the subject matter of the act.

As stated, the act here under consideration applies only to cities having a population of more than 75,000. No other limitation is mentioned. Classifications based solely upon population quite uniformly have been held valid, provided, of course, they were based upon real and substantial distinctions which bore a reasonable and substantial relation to the subject matter involved. See *State, ex rel., v. City of Topeka,* 168 Kan. 663, 215 P. 2d 644; *City of Lawrence v. Robb,* 175 Kan. 495, 265 P. 2d 317, and *Common School District No. 6 v. Robb,* 179 Kan. 162, 293 P. 2d 230.

It is a matter of common knowledge that as cities become more populous they are more subject to slum and blighted areas which are injurious to the public health, safety, morals and welfare of the residents, and in our opinion the population of a city furnishes a legitimate ground for a classification and differentiation such as that contained in the act under consideration. We therefore hold that the act is not a special law within the prohibition of article 2, section 17, of the constitution.

It is next contended the act violates article 12, section 1, of the constitution, which reads:

"The legislature shall pass no special act conferring corporate powers. Corporations may be created under general laws; but all such laws may be amended or repealed."

A short answer to this contention is that we already have found the act to be general legislation rather than a special law, and in *City of Lawrence v. Robb,* 175 Kan. 495, 499, 265 P. 2d 317, it was said that if an act be held to be general legislation the question of a special act conferring corporate powers needs no discussion.

The substance of plaintiff's next contention is that the act is unconstitutional because it authorizes a city to acquire land through the exercise of eminent domain for a private use as distinguished from a public use.

Section 8 of the act provides that a city may acquire by condemnation any interest in real property which it may deem necessary in connection with an urban renewal project. Under section 9 a city is given authority to sell, lease or otherwise transfer property which has been acquired by purchase, condemnation or otherwise, to private redevelopers, subject always to limitations and restrictions enumerated in the act which obligate such purchasers or lessees to devote the property only to the uses specified in the urban renewal plan. Because of this it is argued that inasmuch as private individuals or corporations might stand to profit from the undertaking, the use and purpose would thus be private rather than public.

It is elementary that the legislature possesses no power to authorize the appropriation of one's property for a private use or purpose, but it is equally well-settled that the right to take private property for a public use is inherent in the state, and that the legislature may authorize the acquisition and appropriation of private property for a public use provided the owner is compensated therefor. (*Ottawa Hunting Ass'n v. State*, 178 Kan. 460, 464, 289 P. 2d 754.) The difficulty often encountered lies in the inability of courts comprehensively to define the concept of a public use or purpose, due, no doubt, to the exigencies shown by the facts and the diversity of local conditions and circumstances in an everchanging world.

In our opinion the concept of the terms public purpose, public use, and public welfare, as applied to matters of this kind, must be broad and inclusive. As community life becomes more complex and our cities grow and become overcrowded, the need to use, for the public benefit, areas which are not adapted to the pressing needs of the public, becomes more imperative. Eradication of blighted areas goes to the very essence of public welfare. To hold that the clearance and redevelopment of blighted areas, as defined and characterized by the provisions of the act under consideration, is not a public use of the property and is not in the public welfare, is to close one's eyes to the cold hard facts and realities of everyday life. The mere fact that through the ultimate operation of the law the possibility exists that some individual or private corporation might make a profit does not, in and of itself, divest the act of its public use and purpose. In upholding similar federal legislation as applied to the District of Columbia in the recent case of *Berman v.*

*Parker,* 348 U. S. 26, 99 L. ed. 27, 75 S. Ct. 98, the Supreme Court of the United States said:

"Once the object is within the authority of Congress, the right to realize it through the exercise of eminent domain is clear. For the power of eminent domain is merely the means to the end. . . . Once the object is within the authority of Congress, the means by which it will be attained is also for Congress to determine. Here one of the means chosen is the use of private enterprise for redevelopment of the area. Appellants argue that this makes the project a taking from one businessman for the benefit of another businessman. But the means of executing the project are for Congress and Congress alone to determine, once the public purpose has been established. . . . The public end may be as well or better served through an agency of private enterprise than through a department of government—or so the Congress might conclude. We cannot say that public ownership is the sole method of promoting the public purposes of community redevelopment projects." (pp. 33, 34.)

We hold that the purpose and use for which property may be acquired by condemnation is a public use and purpose, and that the act is not invalid on the ground contended.

Plaintiff's next contention is that section 9 of the act, which authorizes a city to sell or otherwise dispose of property acquired by condemnation to a private person or corporation to be used by them for a gainful purpose, violates public policy and section 2 of the bill of rights of the constitution, which reads:

"All political power is inherent in the people, and all free governments are founded on their authority, and are instituted for their equal protection and benefit. No special privileges or immunities shall ever be granted by the legislature, which may not be altered, revoked or repealed by the same body; and this power shall be exercised by no other tribunal or agency."

and in this connection relies upon *Winters v. Myers,* 92 Kan. 414, 140 Pac. 1033, in which it was said that a statute which has the effect of transferring property belonging to all of the people, without compensation or public advantage, to a few, denies that equal protection and benefit to the people for which government is instituted and as declared in the bill of rights. Reference to the facts and question involved in that case clearly establishes that it is not in point on the question here involved. Furthermore, it already has been held that the use and purpose here involved is public. In *Johnson v. Reno County Comm'rs,* 147 Kan. 211, 225, 75 P. 2d 849, it was said that the mentioned section of the bill of rights refers solely to political privileges and not to those relating to property rights. And in *Herken v. Glynn,* 151 Kan. 855, 867, 101 P. 2d 946, a political right was defined as consisting of the right and power

to participate in the establishment or management of government, or to exercise the right of suffrage and to hold office.

We find no merit in plaintiff's contention that the act violates the mentioned section of the bill of rights.

Plaintiff further contends the act is unconstitutional in that it contains an unlawful delegation of legislative powers, contrary to article 2, section 1, of the constitution, which reads:

"The legislative power of this state shall be vested in a house of representatives and senate."

Section 15 of the act provides that a city may itself exercise its urban renewal project powers, or may, if the local governing body by resolution determines such action to be in the public interest, elect to have such powers exercised by an urban renewal agency, with the exception of certain limitations contained in section 7 (*h*). Provision also is made, in the discretion of the governing body of the city, to exercise the powers through a board or commissioner, or through officers of the municipality. Section 16 provides for the creation of an urban renewal agency and defines its authority in detail.

One phase of this question was considered in *State, ex rel., v. City of Topeka,* 176 Kan. 240, 270 P. 2d 270 (commonly known and referred to as the "Park and Shop" case), and it was held that any attempt by a municipal corporation to contract away any of its powers or duties granted by the legislature, to a private individual or corporation, constitutes an illegal delegation of such powers and duties by the city. In that case the statute under consideration did not authorize the city to delegate any of its powers or duties to a private individual or corporation, whereas the act before us specifically authorizes a city to delegate certain powers and duties within prescribed limitations. The question is—did the legislature have power to do this, or does it amount to an unlawful delegation of legislative authority?

We think it clear that while the legislature cannot delegate its constitutional power to make a law, it can make a law which delegates the power to determine some fact or state of things upon which such law shall become operative. In other words, the legislature may enact general provisions but leave to those who are to act certain discretion in "filling in the details," so to speak, provided, of course, it fixes reasonable and definite standards which govern the exercise of such authority. For a general discussion

of the subject see *State, ex rel., v. Hines,* 163 Kan. 300, 182 P. 2d 865, and *State, ex rel., v. Board of Education,* 173 Kan. 780, 787, 788, 789, 252 P. 2d 859.

A careful examination of the questioned provisions of the act convinces us that it is not invalid on the ground it contains an unlawful delegation of legislative powers.

And, finally, it is contended that the act violates article 2, section 16, of the constitution, which in part reads:

"No bill shall contain more than one subject, which shall be clearly expressed in its title, . . ."

We find no merit in this contention. The act concerns only one subject—urban redevelopment—and that subject is expressed very clearly in its title. For a discussion of the question see *State, ex rel., v. Board of Education, supra,* pp. 784, 785, and *State, ex rel., v. Shanahan,* 178 Kan. 400, 286 P. 2d 742.

Much more could be said concerning the contentions made with respect to the points under consideration, but limits of time and space render it impractical to do so. An act of the legislature is not to be stricken down on the ground it is unconstitutional unless infringement of the superior law is clear beyond reasonable doubt, and judicial examination of any law enacted by the legislature proceeds on the assumption that it is valid unless it contravenes an express inhibition of the constitution or one necessarily implied from some express affirmative provision of that instrument. (*Hicks v. Davis,* 97 Kan. 312, 154 Pac. 1030; *State, ex rel., v. Board of Education, supra,* and *State, ex rel., v. Ancient Order of United Workmen,* 178 Kan. 69, 283 P. 2d 461.) No such showing of invalidity of the act in question has been made.

We therefore hold that Chapter 86, Laws of 1955 (G. S. 1955 Supp. 17-4742-4761), is not invalid for any of the reasons asserted, and judgment is accordingly entered in favor of defendants.

FATZER, J., not participating.