No. 20,494.

OAKLAND SCHOOL DISTRICT NO. 17 OF ALLEN COUNTY et al., *Appellees*, v. THE BOARD OF EDUCATION OF THE CITY OF HUMBOLDT, *Appellant*, and VIDE M. FETHERINGILL, as County Superintendent, etc., et al., *Appellees*.

SYLLABUS BY THE COURT.

1. EVIDENCE—*Sustains Fndings of Court*. The evidence shows that the conclusions of the trial court are well sustained.

2. CITY SCHOOL DISTRICT—*Attaching Adjacent Territory—Good Faith Required*. The first requisite for attaching adjacent territory to a city school district (Gen. Stat. 1915, § 9129) is good faith, and a scheme to secure by the means shown in the record signatures to a petition, so as to add to the taxable property of a city school district, is not a compliance with but a perversion of the statute.

Appeal from Allen district court; OSCAR FOUST, judge. Opinion filed March 10, 1917. Affirmed.

*H. A. Ewing, S. A. Gard, G. R. Gard*, all of Iola, *G. A. Amos*, and *L. T. Cannon*, both of Humboldt, for the appellant.

*Altes H. Campbell, R. E. Cullison, Frank R. Forrest*, and *B. E. Clifford*, all of Iola, for the appellees; *J. B. F. Cates*, of Independence, of counsel.

The opinion of the court was delivered by

WEST, J.: The board of education of the city of Humboldt appeals from a judgment setting aside its order of October 21, 1914, purporting to detach certain territory from an adjacent school district. The board felt the need of more property on which to raise taxes. A=half section of land lying adjacent and in school district No. 17 would increase the valuation by $1,452,395, and while it would limit the latter district to less than a quarter of a million dollars assessed value it would add to the taxes of two industrial plants located on the half section $10 a day and $3 a day respectively. There was not a child of school age on the half section. One family consisting of man and wife lived in a house. Another family consisting of a man and wife lived in a tent where they had sojourned for some time by the sufferance of one of the plants for which the husband worked. They had a daughter who had recently married. August 24, 1914, the board met in special session—

"For the purpose of considering ways and means whereby a part or all of District No. 17 might be annexed to District No. 16, also miscellaneous items preparatory to the opening of school. After considerable discussion it was moved and seconded that the President appoint a committee to interview the patrons of District No. 17, in regard to annexation to District No. 16. Motion carried. President appointed on this committee Wm. Manion and J. M. Lintner and they to secure such help as they desire."

October 21 another special meeting was called, at which time another member was added to the committee. The signatures of the family living in the tent and that of their married daughter were obtained. The manner of obtaining the latter is one of the interesting features of the case. Assuming, without deciding, that they were real residents of the desired territory and not mere transients, it is to be observed that one of the members of the committee secured the services of the family physician of the desired signers. The man, Mr. Achey, who was working for one of the plants, objected to signing for fear trouble would arise, and the solicitors assured him there would be none.

"They said, it wouldn't make us any trouble; if be any, it would be on them and they said the trouble would be on them; they would be in all the trouble if there was any trouble come up.

School District v. Board of Education.

"Q. What was the trouble talked about? A. Well, the trouble was about us moving or anything of that kind, if we had to get out of the land; I still wanted to work for them when they had more work to do and such as that.

"Q. To what extent did they say they would protect you in the event any trouble should occur? A. They said, they would stand by us until the day of resurrection if any trouble came up, for they would stay with us."

There is no dispute that substantially this assurance was given. It appears that after the employer learned of the signature Mr. Achey was ordered off the premises, and on suggesting that he hated to lose his job was told that the way to retain it was to take his name from the paper. The Acheys then went to see a member of the committee who told them where there were some houses they could look at and if suitable to report to him.

"He said there was some houses down below there, we could go look at them and if they suited us, to come back and let him know; we went down and looked at them; it got pretty cold but we come back up and he made arrangements for to get them for us, which one; we told him which one and he made arrangements to get one for us. . . . made arrangements over telephone."

Witness further testified that the member said if any one came to them for rent to send them to him. At the time of the trial the witness was still living at the same place and had not paid any rent. The county superintendent testified that on October 21 the president of the board of education held up to her the order of the board attaching the territory. "He held it while I read it. When I got through I looked straight at him and he said I would rather you would not say anything about this for a few days. . . . He never left the paper with me, but took it away." She did not file it because she was enjoined by the Oakland school district not to do so.

The trial court in a long written memorandum giving reasons for the decision remarked, among other things, that neither of the applicants presented the application to the board or was present at any action taken thereon, nor so far as the evidence disclosed manifested any interest whatever in the matter. The petition alleged that the Acheys were induced to sign against their will by the assurance that if any trouble arose or if the company should ask them to remove from the grounds the solicitors would see that they had a place to live

and would stand by them until the day of resurrection, that the signing of the application by the Acheys and their daughter was not in good faith by either the petitioners or the solicitors, and that the daughter, Susie Ryder, was not a *bona fide* resident and elector within the boundaries of the attached territory. The petition expressly charged that the board of education unlawfully and deceitfully, and in collusion with the Acheys and their daughter, conspired to secure improperly, illegally and fraudulently the attachment of the territory in the manner hereinafter set forth. The court in the memorandum referred to said:

"From a careful and conscientious examination and consideration of the pleadings, and all the evidence introduced on the trial and within the statutes and authorities hereinbefore cited and quoted from, and in connection with the reasons hereinbefore in this memorandum set forth, I am impelled to the conclusion that it is my duty to find the issues in favor of the plaintiffs and cross-petitioners, and against the defendant Board of Education."

The statute provides that territory outside the city limits or adjacent thereto may be attached to such city for school purposes, "upon application to the board of education of such city by a majority of the electors of such adjacent territory"; and that upon the presentation of such application if the board deems it proper, "and to the best interests of the schools of said city and territory seeking to be attached" (Gen. Stat. 1915, § 9129), it may issue the order. In this case the order of exercises was reversed. The application came from the board and not from the adjoining territory.

But aside from this, the very first thing manifestly requisite in any such proceeding is good faith and not a mere scheme or device by craft and overinfluence to secure an addition to the taxable property of a city. That the latter and not the former marked every step in this proceeding is apparent upon the facts in the record from beginning to end. A very natural supposition is that in order for attached territory to be benefited the school children living thereon are to have the privilege of attending the city schools, but when such territory does not contain a child of school age it is difficult to see how such benefit can accrue.

Suffice it to say that the trial court was abundantly justified in the conclusions reached and in the reasons suggested in the memorandum.

The judgment is affirmed.