No. 23,495.

The City of Wichita, *Appellant*, v. The Board of County Commissioners of the County of Sedgwick, *Appellee*.

SYLLABUS BY THE COURT.

1. Constitutional Law—*Smallpox Epidemic—Expenses Incurred by City of First Class—May Be Recovered from County—Title of Act Sufficient.* Section 188 of chapter 122 of the Session Laws of 1903 (Gen. Stat. 1915, § 1408), being one of some two hundred sections of an act relating to cities of the first class, is not void under section 16 of article 2 of the constitution on the ground that its provisions are not within the scope of the title.

2. Same—*Title of an Act—What It May Include.* The constitutional provision that the subject of an act shall be clearly expressed in the title does not require that such details as the articulate relationships of cities to counties in their respective capacities as agents of the state, and the duties which they bear towards each other by virtue of that relationship, must be expressed in the title, and an act of two hundred sections formulating a code for the government of cities of the first class, under a title, "An act relating to cities of the first class," may include a provision that such a city's ex-

penditures to suppress a contagious disease are a lawful charge against the county in which such city is located, nor need the title of the act concern itself with such details.

Appeal from Sedgwick district court, division No. 1; THOMAS E. ELCOCK, judge. Opinion filed February 11, 1922. Reversed.

*Robert C. Foulston,* and *George Siefkin,* both of Wichita, for the appellant.
*S. B. Amidon, S. A. Buckland, H. W. Hart, Glenn Porter,* all of Wichita, and *James A. Conly,* county attorney, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: The city of Wichita in this action sought to recover from Sedgwick county for certain necessary charges and expenses incurred and paid by the city during an epidemic of smallpox in 1917 and 1918. The city's itemized and verified bill for reimbursement was presented to the board of county commissioners of Sedgwick county for payment. Payment was refused. Hence this lawsuit.

The trial court gave judgment for the defendant upon the pleadings and certain agreed facts, and the case is here for review.

The pertinent statute reads:

"Whenever smallpox or other kindred contagious diseases exist in the city, the mayor and council shall take such action as in their judgment may be necessary to suppress and prevent the spreading of the same, and pay all necessary expenses for such purposes.

"A detailed, itemized and correct account of all money so expended by the city shall be presented to the board of county commissioners in which such city is located; and said board of county commissioners may monthly audit and allow such claims and draw warrants on the county treasurer in favor of said city therefor, and it shall be the duty of the county treasurer of said county to pay the same out of any funds in the treasury not otherwise appropriated." (Gen. Stat. 1915, §§ 1407, 1408.)

These quoted sections are among the miscellaneous provisions of the general statute relating to cities of the first class, under government by mayor and council, enacted in 1903 (ch. 122). It is entitled: "An act relating to cities of the first class" (immaterial surplusage in title omitted).

To uphold the ruling of the trial court, the appellee contends that the section making the county liable for the city's proper expenses in suppressing the smallpox epidemic is not within the scope of the title, "An act relating to cities of the first class," and that it is therefore void under article 2 of section 16 of the constitution, which provides:

"No bill shall contain more than one subject, which shall be clearly expressed in its title," etc.

Has this contention any merit?  The act of 1903 was obviously designed as a code covering the functions of government in cities of the first class, fixing their status, and defining their powers and duties with respect to themselves, and to their articulate relationship with the general scheme of government in this state and its various subdivisions.  Must these details of the relationship of cities to the state and to the counties or other public subdivisions of the commonwealth be signified in the title to the act?  Surely not.  Note section 1, of the act, which makes it the duty of the governor, upon a certified showing that any town in Kansas has 15,000 inhabitants, to issue a proclamation declaring such town to be a city of the first class. The 188th section is the one which makes it the duty of the board of county commissioners to audit and allow the city's proper bills for the suppression of contagious diseases.  Here are duties imposed on the governor in section 1, and duties imposed on the county board in section 188, and it would be just as logical—and just as hair splitting—to contend that section 1 is void as that section 188 is void, for there is no greater intimation in the title of duties imposed on the governor than on the county board.  A score of illustrations from this act to the same general effect could be gleaned from it, or from any other act of a similarly comprehensive character.  Look at the general act of 1876 relating to public education (ch. 122).  Its title is, "An act for the regulation and support of common schools."  Under this simple title there lies the entire statutory foundation of our public-school system, covering not only such matters as schools and school districts, and school officers and their duties, but matters so distantly related thereto as the disposition of the federal land grants for school purposes, and including such details as the mode of settlement and acquisition of school lands, duties of the state auditor and governor in relation to the issue of land patents, criminal proceedings and penalties for waste or trespass on school-land properties, etc.  But though the title to this act gives no hint of these far-reaching details, yet because they are mere details of the general scheme of the act for the effective regulation and support of common schools, and are germane and pertinent to the principal purpose of the act, they are not subject to constitutional infirmity under section 16 of article 2.

So, too, in the act under scrutiny.  The duty of the city to suppress contagious diseases, and the duty of the county board to audit and

allow payment for the city's expenses, are but mere details in the general scheme of the broad purposes for which city governments and other subdivisions of the state are erected. It is familiar law that a city is for many purposes an agency of the state, for the discharge of governmental purposes. The care of the poor, the afflicted and destitute, are governmental concerns, and the constitutional unit for the effective discharge of these humanitarian responsibilities is the county.

"The respective counties of the state shall provide, as may be prescribed by law, for those inhabitants, who, by reason of age, infirmity, or other misfortune, may have claims upon the sympathy and aid of society." (Const., Art. 7, § 4.)

Under this constitutional provision a general legislative plan for the relief of the afflicted and misfortunate has been enacted. The mayors and councilmen of cities and the trustees of rural townships are designated as overseers of the poor, and their proper expenditures are chargeable to their respective counties. (Gen. Stat. 1915, ch. 92; *Dykes v. Stafford County*, 86 Kan. 697, 121 Pac. 1112.) The duties of the city and of the county board, under the questioned sections of the act relating to cities of the first class, have obviously been prescribed to harmonize and articulate with existing and familiar legislation. The liability of the county is absolute, provided the city's bills for such expenditures are inherently just, prudent and reasonable, and that is not disputed in this instance. Section 188 of the act of 1903 (Gen. Stat. 1915, § 1408) is not subject to the constitutional objection raised against it. (*The State v. Scott*, 109 Kan. 166, 197 Pac. 1089.)

On the general question as to how comprehensive an act may be without infringing the constitutional inhibition limiting the scope of a legislative bill to one subject which must be clearly expressed in the title, when such bill is in the nature of a codification, see the instructive case of *Central Railway Co. v. State*, 104 Ga. 831, 42 L. R. A. 518.

The judgment of the district court is reversed, and the cause is remanded with instructions to enter judgment for plaintiff.