No. 37,742

LLOYD K. BARHAM, FRED HUMMER and JULIUS FREDERICK, *Appellees,* v. THE GOVERNING BODY OF THE CITY OF CHANUTE, *Appellant*

(213 P. 2d 960)

Opinion filed January 28, 1950.

*Joe F. Balch,* of Chanute, argued the cause, and *Robert L. Briley,* of Chanute, was with him on the briefs for the appellant.

*Wm. Gough, Jr.,* of Chanute, argued the cause, and *T. R. Evans* and *Ruth Bordner Gough,* both of Chanute, were with him on the briefs for the appellees.

The opinion of the court was delivered by

HARVEY, C. J.: The appeal in this case is from the judgment of the trial court enjoining the defendant, a city of the second class, from extending its water mains beyond the limits of the city and levying taxes therefor. The proceedings for extending the water mains were taken under G. S. 1935, 14-705 to 14-710, which are set out as an appendix to this opinion. The record discloses that on June 20, 1946, a petition was filed with defendant's city clerk

praying for the construction of 8,655 feet of water line in the territory described in the petition, which territory is outside of but adjacent to the city of Chanute. On June 25, 1946, the governing body of the city examined the petition and found that it had been signed by a majority of the resident owners owning more than fifty-one percent of the property in the proposed benefit district described in the petition, and adopted a resolution accepting the petition; directed the city engineer to prepare plans and specifications, and directed the performance of the work of extending the water line. Iron pipe was ordered for the extension of the water line, which was not received until December, 1948. On December 7, 1948, the governing body of the city adopted and duly published an ordinance creating the benefit district, ordering the construction of the water line and authorizing the issuance of bonds to pay the cost and the necessary special assessments to retire the bonds.

On February 14, 1949, three individual owners of property which would be affected by the construction and payment of the costs of the water line filed a suit to enjoin its construction, upon the grounds, *first*, that the statutes which purported to authorize the construction of the water line were invalid, and, *second*, even though the statutes were valid the governing body of the city had no jurisdiction of the premises "for the reason that the petition presented to the city was not signed by a majority of the resident owners of the said proposed benefit district, nor was it signed by the resident owners owning more than fifty-one percent of the property to be assessed in the proposed territory affected." After a hearing the court granted a temporary injunction. The defendant filed an appropriate answer. When the case came on for hearing the parties stipulated:

"1. That in determining the sufficiency of the petition described as Exhibit 1 to plaintiffs' petition filed herein, if the signers thereof whose residence was, on the date of the filing of said petition, outside the physical limits of the benefit district described in said petition, were excluded, then the petition would contain the signatures of less than a majority of the resident property owners, and the petition would contain the signatures of the owners of less than 51 percent of the property within the benefit district.

"2. That in determining the sufficiency of the petition described as Exhibit 1 to plaintiffs' petition filed herein, if the signers thereof whose residence was, on the date of the filing of said petition, within the physical limits of the benefit district described in said petition or within the corporate limits of the City of Chanute, Kansas, were included, then the petition contains the signatures of a majority of the resident property owners owning more than 51 percent of the property within the benefit district."

They also agreed that judgment should be rendered on the pleadings, stipulation and argument. The court found:

"1. That the temporary injunction heretofore granted and allowed herein, on March 30, 1949, should be made final and permanent.

"2. That Sections 14-705 to 14-710, G. S. 1935, are not unconstitutional, null and void.

"3. That defendant herein was without jurisdiction to perform any act under and by virtue of the petition requesting construction of the proposed water line, all as described in plaintiffs' petition filed herein, for the reason that said petition was not signed by a majority of the resident owners owning more than fifty-one percent of the property to be assessed in the said territory."

The court made and entered the following decree:

"1. That defendant herein be, and it hereby is, permanently restrained and enjoined from performing any further act under and by virtue of the petition requesting construction of the proposed water line, all as described in plaintiffs' petition filed herein, and is further restrained and enjoined from creating or attempting to create any liability against the proposed benefit district described in plaintiffs' petition filed herein, and from levying any taxes against the territory in said district or any part thereof. . . ."

and rendered judgment for plaintiffs for their costs. From this judgment and decree the defendant appealed.

Appellant argues that persons who own land in the benefit district, who were residents either of the district or of the city of Chanute, were qualified under the statute to sign the petition. We concur in that view. The sections of the statute in question were originally passed in 1925 (Chap. 120, Laws 1925). Both the title of the act and the body of the act conferred authority upon cities of the second class to extend their water mains and water service to territory lying beyond, but adjacent to, the city limits. The validity of that act was sustained by this court in *Barrett v. City of Osawatomie*, 131 Kan. 50, 289 Pac. 970, even though the act was uncertain as to the territory outside of the city to be taxed for the extension of the water mains. The act was amended in 1931 (Chap. 129, Laws 1931) so as to avoid that difficulty by creating a benefit district. This act was a grant of authority to the city. Under the statute the city issues bonds to pay the initial cost. If the pipe to be laid exceeds six inches in diameter the city pays for the extra cost. The petition makes a contract between the parties, which is abrogated in the event the territory comprising the benefit district is taken into the city and in other respects the statute treats the water mains and service as it does the part of the city waterworks

within the corporate limits. Certainly there is no reason why one residing within the corporate limits, but who owns land in the benefit district, should not be eligible to sign the petition. There is no specific wording in the statute which excludes him. This view of the statute, under the stipulation of the parties, makes it clear that the city had jurisdiction to pass upon the petition and proceed with the work.

Counsel have cited a few cases on this point, but none of them is particularly helpful. That is true with cases we found from our own research. Considering the nature of the work to be done and the liabilities assumed by the respective parties we think it clear that the court erred in holding the petition insufficient to give the city jurisdiction to act.

There is no cross appeal here with respect to the validity of the statute. Notwithstanding that, counsel for appellees argue that question. We think it is not before us, but if it is, we see no reason for holding the statute invalid.

From what has been said the judgment of the trial court should be reversed with directions to deny the injunction.

It is so ordered.

## APPENDIX

14-705. That any city of the second class owning or maintaining a municipal water system may extend its water mains into territory beyond the boundaries of said city for the purpose of supplying water to customers living in territory beyond the city limits of said city, but in territory adjacent thereto, under the following conditions: Whenever a majority of the resident property owners owning more than fifty-one percent of the property to be assessed in territory beyond the city limits of any city of the second class, but adjacent thereto, shall present to the governing body of such city a petition praying for the extension of water mains into said territory, the said governing body of such city shall consider said petition, and if it shall find the extension of said water mains will be of benefit to said city, then the said governing body may, by ordinance, direct the laying and construction of such water mains, together with all the necessary appurtenances into said adjacent territory.

14-706. The aforesaid petition so presented shall be in the form of a contract, creating a benefit district, prescribing the place where such water mains are to be located and stipulating and agreeing that the cost of laying and constructing such water mains, together with all the necessary appurtenances thereto, shall be taxed against the properties located within said benefit district; and said petition shall be a contract, shall pass with the property, and be binding upon the heirs and assigns of owners of property within the benefit district.

14-707. In the event that said governing body of such city shall order the laying and construction of such water mains, they shall issue ten-year serial bonds to pay the cost thereof, and the board of county commissioners shall levy and pay over to the city, annual special assessments against all property included in said benefit district petitioning for said water service, sufficient to pay the annual interest and to retire said bonds on maturity of the same, in the same manner and to the same extent as special assessments for lateral sewers are now levied in said cities: *Provided, however,* That where the governing body of such city shall deem it advisable to lay a water main larger than six inches in diameter in such benefit district, the amount to be paid by such special assessment shall not be greater than would be the cost of a main six inches in diameter, and the remainder of the cost shall be paid from the water fund of the city.

14-708. In the event in [any] such territory so supplied with water service shall thereafter be added to and become a part of said city supplying such service, said contract shall be abrogated, and water shall be furnished on the same terms as it is furnished for other citizens of said city.

14-709. All money that is received from said water service shall be deposited in the water fund of said city, and shall become a part of said fund. The expense of extending such service shall be part of the same funds thereof in the same manner as the cost of extending water mains in the city is paid, and the mains so extended shall be and remain a property of the city.

14-710. This act is intended to be supplemental to all other acts of the Revised Statutes, and on no account shall the Revised Statutes of 1923 be repealed hereby.