No. 38,768

THE STATE OF KANSAS, ex rel., OREN GRAY, County Attorney of Labette county, *Plaintiff*, v. BOARD OF EDUCATION OF THE CITY OF CHETOPA, being School District No. 4, Labette county; JOINT COMMON SCHOOL DISTRICT No. J-100, Labette and Cherokee counties; COMMON SCHOOL DISTRICT No. 5, Labette county; and COMMON SCHOOL DISTRICT No. 3, Labette county, *Defendants*.

(252 P. 2d 859)

Opinion filed January 24, 1953.

*J. Logan Shuss,* special assistant county attorney, argued the cause, and *Oren Gray,* county attorney, and *Earl Bohannon,* special assistant county attorney, were with him on the briefs for the plaintiff.

*Richard L. Becker,* of Coffeyville, argued the cause, and *Dan R. Aul,* of Chetopa, and *Norris L. Hildreth,* of Coffeyville, were with him on the briefs for the defendants.

*Paul Armstrong,* of Columbus, was on the briefs *amicus curiae.*

The opinion of the court was delivered by

WEDELL, J.: This is an action in the nature of quo warranto to test the validity of chapter 395, Laws 1951, and particularly section 41 thereof (G. S. 1951 Supp. 72-1627) pursuant to which defendant, the board of education of school district No. 4, city of Chetopa, Labette county, annexed certain territory for school purposes.

Three other school districts are joined as parties defendant. These districts are:

Joint common school district No. J-100, Labette and Cherokee counties, state of Kansas.

Common school district No. 5, Labette county, state of Kansas.

Common school district No. 3, Labette county, state of Kansas.

All officers of two of the three districts last named and two officers of one of such districts, all of whom were officers of their respective school districts at the time of the annexation of their districts, although not joined by plaintiff as parties defendant, have entered the action as parties defendant.

The four school districts and the officers mentioned have joined in a motion to dismiss plaintiff's action on the ground the amended petition fails to state facts disclosing invalidity of the annexation. The motion is treated by the parties as a demurrer and will be so considered. For clarity of issues it probably should be stated at the outset plaintiff in nowise challenges the regularity of any procedural steps in the annexation proceedings. Plaintiff's contention is chapter 395, Laws 1951, and particularly section 41 thereof (G. S. 1951 Supp. 72-1627) is unconstitutional but if valid, certain action undertaken in connection with the annexation is illegal.

The pertinent portion of the amended petition reads:

"1. That School District No. 4 is a regularly organized school district and comprises the City of Chetopa, Kansas, and adjacent territory lying and being within the County of Labette, State of Kansas.

"2. That Common School District No. J-100 is a regularly organized school district, its territory lying and being situated within the counties of Labette and Cherokee, State of Kansas.

"3. That Common School District No. 5 is a regularly organized school district, its territory lying and being within the County of Labette, State of Kansas.

"4. That Common School District No. 3 is a regularly organized school district, its territory lying and being within the County of Labette, State of Kansas.

"5. That said School District No. 4 and its said board of education have attempted and are illegally attempting to attach all of the territory constituting

School Districts Nos. 3, 5 and J-100 and are assuming to exercise control over the territory comprising said districts, and will, unless restrained by this court, levy taxes upon all of the properties comprising each and all of said other school districts under and by virtue of Ch. 395 of the 1951 S. L. of the State of Kansas, for the payment of the existing bonded indebtedness of said School District No. 4, and the Board of Education of the City of Chetopa of the State of Kansas.

"6. Plaintiff further shows to the court that said Ch. 395, S. L., 1951, is unconstitutional, void and of no legal effect and that the acts, matters and things done by said defendants under said act will be and are in contravention of the constitutions of Kansas and the United States of America as hereinafter set forth.

"7. That said act attempts to confer legislative powers upon the defendant, School District No. 4 and its board of education in contravention and violation of the provisions of Sections 1 and 21, Article 2, of the constitution of the State of Kansas, in that said act of the legislature wholly fails to set up any standard or outline within which the legislature has authorized the board of education of the district, to which territory is to be attached as provided in Section 41, Ch. 395, S. L., 1951, said chapter being S. B. No. 5, to determine whether 'if it deems it proper and to the best interest of the schools of said city and territory, issue and enter upon its records an order attaching said territory to the city for school purposes, and such territory shall thereupon become and compose a part of the city for school purposes only, and the taxable property of such attached territory shall be subject to taxation by the board the same as other property within its jurisdiction, including levies for the payment of existing bonded indebtedness and interest thereon.'

"8. Said act is in contravention and violation of the provision of Section 16, Article 2 of the constitution of the State of Kansas, in that the title of said act does not refer to or indicate that the act attempts to give to boards of education of one school district authority to attach he terriory of adjoining school districts. The act itself provides that 'territory outside the city limits of any city, and adjacent thereto or adjacent to property attached to said city for school purposes . . . may be attached to said city for school purposes as herein provided.'

"9. Section 41 of Ch. 395, 1951 S. L., violates the due process clause of the fourteenth amendment to the constitution of the United States in that it does not provide for an impartial tribunal to determine the question of whether it is proper and to the best interest of the schools involved that they shall be attached to and become a part of said city for school purposes.

"10. Plaintiff further states to the court that the Labette County Community High School was originally organized in the year 1893 pursuant to Ch. 140, S. L. of Kansas, 1893, as and conducted as a County High School at Altamont, Labette County, Kansas, and continued to conduct said school until H. B. No. 522, Ch. 187, S. L., 1923, was adopted and became effective; that since that time said high school has been known and conducted under the name of Labette County Community High School and is now operating and offering a course of study prescribed for accredited high schools by the State Board of Education; that the territory of the said Labette County Community High School as prescribed by the laws of the State of Kansas 'shall include all territory in said county not included in the territory of other accredited high schools' (Ch. 187, S. L., 1923, Sec. 1) that the territory hereinafter mentioned

and described as being Common School Districts Nos. 3 and 5 and that part of the territory hereinafter mentioned as being in Joint Common School District No. J-100, except that part thereof lying in Cherokee County, State of Kansas, has been from the time of the establishment of the Labette County Community High School and down to the present time a part of the territory of the Labette County Community High School and its predecessor, Labette County High School.

"11. Plaintiff further states to the court that even though the act in question be determined by this court to be valid, yet the proceedings taken to attach the territory of the several defending districts, and the actions of said board of education of the City of Chetopa are illegal and should be vacated and set aside for the following reasons, to wit:

"a. That said act provides that 'where the territory of any school district is attached to any city for school purposes, the territory so attached shall not reduce the population of the existing common school district in the one-teacher school to less than ten (10) children of less than six (6) nor more than sixteen (16) years of age who have not completed the elementary course of study, or will reduce existing taxable, tangible valuation of such existing common school district to less than $250,000.'

"b. That there is but one teacher employed in each of several common school district defendants; that by the act of the board of education of the City of Chetopa of the State of Kansas, being School District No. 4, said board of education in contravention of said act has attempted to attach the entire district and that such actions by the said board of education are illegal and void.

"12. Plaintiff further states to the court that all of the territory attempted to be attached to the territory of School District No. 4 by the defendant, Board of Education of the City of Chetopa of the State of Kansas, constituted a part of the territory of the Labette County Community High School and is contrary to the intent of the legislature in passing Ch. 395, S. L., 1951, as shown by Section 41 thereof, and the acts of said board are therefore without authority and are null and void."

## The pertinent part of G. S. 1951 Supp. 72-1627 provides:

"Territory outside the city limits of any city, and adjacent thereto or adjacent to property attached to said city for school purposes, may be attached to said city for school purposes as herein provided. Upon application by a majority of the electors in the territory seeking to be attached, to be determined by an enumeration taken by an elector of such territory appointed by the county superintendent of the county in which the greater portion of such territory is located, the board shall, if it deems it proper and to the best interests of the schools of said city and territory, issue and enter upon its records an order attaching said territory to the city for school purposes, and such territory shall thereupon become and compose a part of the city for school purposes only, and the taxable property of such attached territory shall be subject to taxation by the board the same as other property within its jurisdiction, including levies for the payment of existing bonded indebtedness and interest thereon: *Provided,* That if a petition signed by twenty-five percent (25%) of the electors in such territory protesting such attachment is filed with such county superintendent

within thirty (30) days after the order of attachment, such county superintendent shall call and hold an election in such territory, ten (10) days' notice of which shall be given by one (1) publication in a newspaper of general circulation in the city, for the purpose of voting upon the proposition to attach such territory to such city, and if a majority of those voting shall vote against such proposition such order of attachment shall be ineffective: *Provided further,* That such territory shall not be attached to such city if such attachment will reduce the population of an existing common-school district maintaining a one-teacher school to less than ten (10) children of not less than six (6) nor more than sixteen (16) years of age who have not completed the elementary course of study or will reduce existing taxable tangible valuation of such existing common-school district to less than two hundred fifty thousand dollars ($250,-000) nor if such attachment will reduce the population of an existing common-school district maintaining a two (2) or more teacher elementary school to less than twenty (20) children of not less than six (6) nor more than sixteen (16) years of age who have not completed the elementary course of study, or will reduce the existing taxable tangible valuation of such school district maintaining a two (2) or more teacher school to less than five hundred thousand dollars ($500,000): *Provided further,* That the authority herein conferred shall not be construed to authorize or permit a board to attach any territory which is included in any existing or organized rural high-school district, except that if more than fifty percent of the assessed valuation of a rural high-school district shall become a part of any city of the first class the remaining portion of said rural high-school district may upon proper application as herein provided be attached to the city for school purposes."

Although the petition challenges the constitutional validity of chapter 395, Laws 1951, plaintiff, in fact, complains only of section 41 thereof, previously quoted. We turn first to plaintiff's contention the title of the act contravenes article 2, section 16, of our constitution which, insofar as material, provides:

"No bill shall contain more than one subject, which shall be clearly expressed in its title. . . ."

The pertinent part of the title to chapter 395 reads:

"An Act to *clarify and codify* certain laws governing schools, relating to common-school, rural high-school and community high-school districts, and boards of education of the first- and second-class cities; prescribing the powers and duties of such districts and boards of education, and the officers thereof. . . ." (Our italics.)

The complaint is that since the title does not specifically mention the subject of *attachment of territory* for school purposes section 41, which deals with that subject is, therefore, unconstitutional. Such a contention has been made on numerous occasions with respect to a great variety of legislative acts. It is unnecessary to burden the pages of the Kansas reports with quotations from numerous opinions respecting the purpose and intent of the constitutional provision here

involved. Its intent and purpose was to prevent the union in the same act of subjects wholly incongruous with, independent of and disconnected with the real subject of the legislation as reflected in the title of the act. Where the subject of the legislation in question is assimilated to the other provisions of the act and is germane and pertinent thereto it cannot be said to be in violation of article 2, section 16, of our constitution. (*Philpin v. McCarty, Supt., &c.,* 24 Kan. 393, 403; *State, ex rel., v. Howat,* 109 Kan. 376, 198 Pac. 686; *City of Wichita v. Sedgwick County,* 110 Kan. 471, 204 Pac. 693; *State, ex rel., v. Board of Education,* 122 Kan. 701, 706, 253 Pac. 251; *State, ex rel., v. Beggs,* 126 Kan. 811, 271 Pac. 400; *State, ex rel., v. School District,* 163 Kan. 650, 659, 185 P. 2d 677.) One quotation from a case involving school legislation will suffice to illustrate the correct interpretation of the constitutional provision. In *City of Wichita v. Sedgwick County,* supra, it was said:

"Look at the general act of 1876 relating to public education (ch. 122). Its title is, 'An act for the regulation and support of common schools.' Under this simple title there lies the entire statutory foundation of our public-school system, covering not only such matters as schools and school districts, and school officers and their duties, but matters so distantly related thereto as the disposition of the federal land grants for school purposes, and including such details as the mode of settlement and acquisition of school lands, duties of the state auditor and governor in relation to the issue of land patents, criminal proceedings and penalties for waste or trespass on school-land properties, etc. But though the title to this act gives no hint of these far-reaching details, yet because they are mere details of the general scheme of the act for the effective regulation and support of common schools, and are germane and pertinent to the principal purpose of the act, they are not subject to constitutional infirmity under section 16 of article 2." (p. 473.)

In the instant act the broad concept or subject of the act, as reflected in its title, is "An Act to *clarify and codify* certain laws governing schools," etc. The title then proceeds to enumerate various general subjects such as school districts, school boards, their powers and many others. The subject of attachment of territory for school purposes is not incongruous with, independent of and disconnected with the various subjects expressly contained in the title of the act. On the contrary the subject of attachment of territory for school purposes is germane and pertinent to the principal subject and purpose of the act as reflected in its title. The act, therefore, does not violate article 2, section 16, of our constitution.

Plaintiff asserts section 41 violates the due process clause of the federal constitution in that it fails to provide an impartial tribunal to determine whether the proposed attachment of the territory is

". . . proper and to the best interests of the schools of said city and territory. . . ." We shall not unduly labor this contention. The legislature has all the legislative power that exists. We know of nothing which prevents the legislature from designating the board of education as the proper agency for determining whether, in its judgment, the attachment of territory is to the best interests of the schools of the city and the attached territory. In the early case of *State v. Railway Co.*, 76 Kan. 467, 92 Pac. 606, involving the creation of a board of railroad commissioners, it was held:

"The act is not invalid because the constitution does not specifically provide for the creation of a board of railroad commissioners. The subjects upon which the legislature may enact laws are not enumerated in the constitution." (Syl. ¶ 4.)

But we need not pursue this subject. In section 41 the board is given no authority or power to make the exercise of its discretion final and conclusive. The legislature rested the final and ultimate decision with the electors in the school districts involved. The board is not obliged to approve the application of the electors to attach territory. Even, however, if the board approves the application only a petition signed by twenty-five percent of the electors in the district is necessary to compel the submission of the entire matter to a vote in the district. Manifestly it cannot be said the electorate itself is a partial tribunal or that an opportunity of the electorate to make its own final decision in the premises constitutes an infringement of the due process clause of the federal constitution. Furthermore, should any board of education act fraudulently or in bad faith in the exercise of its discretion there is ample redress through the courts. (*School District v. Board of Education*, 100 Kan. 59, 163 Pac. 800; *State, ex rel., v. Board of Education*, 122 Kan. 701, 702, 253 Pac. 251.)

Touching the subject of an impartial tribunal to decide whether annexation is proper and to the best interests of the schools of a city and the attached territory plaintiff relies on two cases from other jurisdictions. (*Stahl v. Board of Supervisors*, 187 Ia. 1342, 175 N. W. 772; *Comrs. of Drainage Dist. v. Smith*, 233 Ill. 417, 84 N. E. 376.) In the first case a member of the board of supervisors of a drainage district had a special interest and his vote made him $10,000 richer than he would have been had he not cast his vote as he did. In the second cited case one of the assessors appointed to make assessments in the drainage district was greatly benefited by the formation of the district and the assessment made. Such cases are not in point.

Plaintiff argues that part of section 41 which states the board shall issue an order for the attachment of territory, ". . . if it deems it proper and to the best interests of the schools of said city and territory," is a delegation of legislative power and, therefore, violates article 2, section 1, of our constitution which reads:

"The legislative power of this state shall be vested in a house of representatives and senate."

In support of the contention it cites *State, ex rel., v. Hines,* 163 Kan. 300, 182 P. 2d 865; *State, ex rel., v. School District,* 140 Kan. 171, 34 P. 2d 102; *Brown v. Illinois Bankers Life Assur. Co.,* 144 Kan. 670, 63 P. 2d 165. The Hines case involved the 1945 school reorganization act which bears little, if any, resemblance to the instant act insofar as the fundamental principle of delegation of legislative power is concerned. The defects in that law, as the majority of this court viewed them, are fully set forth in the opinion and need not be repeated here. The instant act obviously is an attempt to eliminate objectionable features of the former school reorganization act and to accomplish at least some improvements deemed necessary by the drafters and enactors of the former law. Under the act involved in the second case cited by plaintiff any private individual could withdraw his land from the school district and to that extent effect a reorganization of the district. It was decided the act was unauthorized and was a special rather than a valid general law of uniform operation when the latter kind of law could have been enacted. The Brown case involved an action to recover on an insurance policy while the law commonly referred to as the insurance moratorium law was in effect. Concerning that act it was said:

"Here power was attempted to be delegated without prescribed standards and to enact not *subordinate* rules and regulations, but rules and regulations which would supersede any and all existing laws, or parts thereof, in conflict therewith." (p. 677.)

The cases relied on by plaintiff are not controlling here and are of little help, if any, in view of entirely different provisions in the act now under scrutiny. Under section 41 of the instant act the board neither institutes nor passes on legislation of any kind or character. It originates nothing. It is not the moving party. It is merely an intermediary in one stage of the proceeding and without final authority, as will later appear, to effect the attachment of territory. It is the recipient of an application filed by a majority of the

electors residing in the territory which such electors seek to have attached. The board is required to make a finding, favorable or unfavorable, on the application. In making such finding the board is merely executing the legislative will which, in effect, directs the board to exercise its discretion in determining whether in its judgment the attachment is proper and to the best interests of the schools of the city and the territory sought to be attached.

In a proper exercise of its discretion the board manifestly is obliged to consider numerous factors such as buildings and other physical equipment to accommodate additional students, the cost of new buildings or additions to old ones, if necessary, transportation problems, the sufficiency of its teaching force and many other practical matters involved in the proper maintenance, conduct and supervision of the school system. The exercise of that discretion does not differ substantially, if any, in character from the discretion it exercises in the performance of numerous other duties imposed upon it in the same act by the provisions of G. S. 1951 Supp. 72-1623 to 72-1626, inclusive. No rules or standards are prescribed for the board's determination of the numerous other duties prescribed in the statutes last mentioned. Shall we say the law prescribing these various statutory duties is void for the reason it is a delegation of legislative or administrative power without prescribed standards or rules to govern the board's judgment? We do not think so.

As heretofore stated, the legislature has not made it imperative that any application for attachment of territory be granted by the board. It often has been held that even the delegation of power to electors to petition designated tribunals to do certain things does not constitute a delegation of legislative power and that the action of the board or tribunal to which the petition is addressed is merely an administrative exercise of discretionary power. (*Barrett v. City of Osawatomie*, 131 Kan. 50, 289 Pac. 970, and numerous cases therein reviewed.) See, also, *Barham v. City of Chanute*, 168 Kan. 489, 491, 213 P. 2d 960, in which the Barrett case is cited. In the Barrett case it was held:

"Chapter 120 of the Laws of 1925, being entitled 'An act concerning cities of second class, enabling them to extend water mains and water service to territory lying beyond but adjacent to city limit,' is not unconstitutional and void as delegating legislative power to petitioners in violation of section 1 of article 2 of the state constitution, because the request of the petitioners is in no sense imperative, but contingent and conditional upon the *discretion to be exercised by the governing body* of the city in finding the extension desired and proposed by the petitioners to be of benefit to the city.

"The governing body of the city was a suitable and capable one *to exercise the discretion* as to the extension of the water main to property outside the city limits being of benefit to the city, even though it had no jurisdiction over such outside property." (Syl. ¶ 1, 2.) (Our italics.)

In the Barrett case one of the arguments was that the discretion involved, in determining whether the extension of the water main beyond the city limits would be a benefit to the city, should have been exercised by the board of county commissioners. This court denied the contention by stating, "No other body could properly determine that question except the representatives of the city." (p. 54.) So, too, in the instant case the legislature concluded the board of education was the best body to pass judgment on the matter submitted to it. There are many laws under which boards, commissions and other tribunals have been vested with power to exercise judgment and discretion which do not violate the rule against delegation of legislative power. A few early additional cases of our own are *State v. Railway Co.*, 76 Kan. 467, 92 Pac. 606; *Schaake v. Dolley*, 85 Kan. 598, 118 Pac. 80.

But we need not unduly prolong the discussion of delegation of legislative power. In view of other provisions of the instant law that subject really becomes an abstract question. As previously stated, a favorable decision by the board on the application in no sense is intended to be a finality under this law. In reality the board's action, if favorable, amounts to no more than an expression of its opinion or judgment and a willingness to have the territory in question attached.

Under our early school laws the school board took the initiative in certain attachment proceedings. In 1925 some of our laws were changed so as to enable a majority of the electors to apply for attachment of adjacent territory and the territory was attached if in the judgment of the board of education of a city it would be to the best interests of the city schools and the attached territory. The approval by the board ended the proceedings. This history is all clearly set forth in the familiar case of *State, ex rel., v. Board of Education*, 122 Kan. 701, 702, 253 Pac. 251, commonly known as the Humboldt case.

However, under the instant law the judgment of the board need not be a finality. As already indicated only twenty-five percent of the electors of a district are required to object to the board's judgment in order to compel the entire matter to be submitted to an election in the territory seeking attachment. If only a majority of

those voting in such election are opposed to the attachment the order of the board is ineffective. It thus becomes clear that under this law we have a new feature which gives the electors within the district, rather than the board, the right to make the final decision. In *State, ex rel., v. Lamont,* 105 Kan. 134, 181 Pac. 617, involving the right of electors to determine whether they would organize a school district, it was said:

"So it may be said here that the will of the petitioners does not govern, but when the provision made by the legislature is accepted by the electors themselves by the proper vote, it becomes operative. The legislature gives them permission to form themselves into such district, and when, by the proper election, they avail themselves of this permission, they are not exercising legislative power, but merely accepting a privilege conferred by a proper exercise of such power. Such granted permission is one means by which the legislature has seen fit to obey the constitutional mandate to promote education, and such provision is not a violation of the constitution." (p. 138.)

See, also, *Barrett v. City of Osawatomie,* supra, p. 53.

We believe it untenable to hold a law which permits the question of attachment of territory to be decided finally by the popular vote of the electors within the territory seeking attachment is a delegation of legislative power. We are satisfied section 41 of the instant act does not violate article 2, section 1, of our constitution. Moreover, if courts entertain any doubt on that subject it is always resolved in favor of validity. Statutes are not stricken down unless the infringement of the superior law is clear beyond reasonable doubt. (*Hunt v. Eddy,* 150 Kan. 1, 90 P. 2d 747.)

Counsel for plaintiff next argue, assuming the law is valid, an entire school district cannot be attached. They refer to no provision in the new act in support of the argument and such a restriction is not contained in section 41. The pertinent part thereof reads:

"Territory outside the city limits of any city, and adjacent thereto or adjacent to property attached to said city for school purposes, may be attached to said city for school purposes as herein provided."

Courts are not at liberty to read a limitation into a clear and unambiguous expression of the legislative will. How much territory may be attached to a certain school district presents solely a matter of legislative wisdom and policy with which courts are not permitted to interfere. In the Hunt case, *supra,* this court restated a long established doctrine, as follows:

"No principle of law is more firmly established in our system of jurisprudence than the principle that the lawmakers possess the sole authority to determine what legislative policies will advance the public interest. Such policies present

questions of statecraft and are determined by the legislative branch of government, and not by the courts." (p. 4.)

The only pertinent prohibition in section 41 is that an attachment of territory shall not be made which results in reducing the territory of a common-school district maintaining a one teacher school or a two or more teacher school to a population and an existing taxable, tangible valuation below that prescribed therein. Obviously it was the legislative intent that if such a district or districts were not attached they should not be impoverished as to population or taxable property to a point where they would be unable to maintain an adequate school system. This provision, however, cannot reasonably be interpreted as a legislative intent to compel the retention of such schools in a district. Moreover any other interpretation of the statute would deny to the electors of a district the right to determine by an election whether the entire district should be attached, a contention we already have held to be untenable. In fact, the parties concede an election was actually held in one of the three districts pursuant to the procedure provided in section 41 and that attachment of the entire territory of the district was favored by a substantial majority.

Plaintiff also appears to argue that one school district is not permitted to attach the territory of another district. This cannot be true. Every foot of territory is within some school district. The result is that attachments of territory to any school district must involve the territory of some existing school district. It is well established by a long line of decisions that there are no vested rights in the existence of a school district and that the legislature has authority to extend or limit its boundaries, consolidate two or more as one, or to abolish a district altogether. (*State, ex rel., v. School District,* 163 Kan. 650, 185 P. 2d 677, and cases therein cited.)

What was said by this court in *State, ex rel., v. Board of Education,* 128 Kan. 487, 278 Pac. 741, will bear repeating. That case involved a bitter struggle between the cities of Pittsburg and Frontenac over the attachment of territory for school purposes. This court said:

"Plaintiff next argues that the board of education of a city of the first class has no authority to take territory outside of the corporate limits of the city for school purposes from territory already attached to a city of the second class for school purposes. It is argued that the legislature did not intend to authorize such action by a city of the first class. *There is nothing in the statute from which this conclusion can be reached. If territory be added to the school district of a city of the first class it must of necessity be taken from some other school district, and the statute makes no distinction prohibiting the taking of*

*territory from the school district of a city of the second class.* If a city of the second class were so close to a city of the first class that a majority of the electors in the school district of the city of the second class desired to be annexed to a city of the first class for school purposes, there does not appear to be anything in the statute that would prohibit the electors from so petitioning, or that would prohibit the board of education of the city of the first class from acting on such a petition and annexing *the entire territory of the city of the second class* to the school district of the city of the first class." (p. 491.) (Our italics.)

In the instant opinion we have covered all subjects contained in the brief filed by counsel, *amicus curiae,* which are presented on issues raised by plaintiff's petition. Matters which do not pertain to the instant case are not properly before us for comment.

The relief sought by plaintiff is denied. Judgment is ordered for defendants.

Harvey, C. J., dissents.