No. 39,163

STATE OF KANSAS, ex rel., *Appellee,* v. LOST SPRINGS RURAL HIGH SCHOOL DISTRICT M & D No. 2, et al., *Appellants.*

(271 P. 2d 812)

Opinion filed June 12, 1954.

*David W. Wheeler*, of Marion, argued the cause, and *Edwin G. Westerhaus*, of Marion, was with him on the briefs for the appellants.

*Mark L. Bennett*, special assistant attorney general, of Topeka, argued the cause, and *Harold R. Fatzer*, attorney general, *Paul Wilson*, assistant attorney general, both of Topeka, and *Thomas J. Butler, Jr.*, of Herington, were with him on the briefs for the appellee.

The opinion of the court was delivered by

HARVEY, C. J.: This was an action in quo warranto brought by the state on the relation of the attorney general to determine the boundaries of Lost Springs rural high-school district M and D No. 2 of Marion county and the boundaries of Herington school district No. 113 of Dickinson county and to oust the Lost Springs rural high-school district from the exercise of power to levy taxes over certain territory. The trial court made findings of fact and conclusions of law and rendered judgment in harmony with plaintiff's petition. The Lost Springs rural high school and the county superintendent of public instruction of Marion county have appealed.

The pertinent facts may be summarized as follows:

The Lost Springs rural high school is located at Lost Springs in Marion county about two miles south of an east and west line which forms the northern boundary of Marion county and the southern line of Dickinson county. About 28 sections of the area composing the Lost Springs rural high-school district are in Marion county but prior to April 1, 1951, its territory included 3 sections of land in common-school district No. 90 and 4 sections of land in common-school district No. 114, both of Dickinson county, which lies directly north of the south boundary line of that county. Adjoining these common-school districts in Dickinson county is school district No. 113 of Dickinson county which includes the city of Herington, a city of the second class. Its schools function under laws pertaining to boards of education of cities of the second class. It operates an accredited high school and also grade schools.

This case involves § 10, Ch. 396, Laws of 1951, effective April 1, 1951, which reads:

"Every common-school district that was not maintaining on November 1, 1950, and which has not, for three school years immediately preceding September 1, 1950, maintained a school within its boundaries, shall be disorganized as of July 1, 1951. The county superintendent having jurisdiction over any such district shall, immediately upon this act becoming effective, issue an order declaring such district disorganized as of July 1, 1951. In addition to giving

notice of such order in the manner provided by law, the county superintendent shall send a copy of this section to each officer of the district within three (3) days after the issuance of such order. Upon such disorganization the county superintendent of the county in which such district is located, and in the case of joint districts, the county superintendents of all counties in which any part of such district is located, shall attach, in the manner hereinafter provided, the territory of such district to an adjoining common or city school district or districts which are maintaining a school or to the district where the majority of the pupils of said disorganized district were attending school on November 1, 1950. At any time prior to July 1, 1951, an election may be held in such district for the purpose of designating the district or districts to which the electors desire the territory of such district to be attached, and if such election be had, the clerk of the board shall notify the county superintendent or superintendents of the action taken. Upon receipt of such notice such county superintendent or superintendents shall issue an order or orders attaching the territory of such district to the district or districts in accordance with the election. If no such designation by election be made by the electors of such district before July 1, 1951, such county superintendent or superintendents shall call and hold a public hearing for the purpose of determining to which district or districts the territory of such disorganized district shall be attached. Within ten days after such hearing and prior to August 15, 1951, such county superintendent or superintendents shall issue an order or orders attaching the territory of such disorganized district to another district or districts in such manner as to comply, as nearly as practicable, with the wishes of the majority of the electors in the various portions of the disorganized district, having due regard for the educational interests of the residents thereof. The selection of the district or districts to which the territory of such disorganized district shall be attached, whether by election in the disorganized district or by the determination of the county superintendent or superintendents, shall be restricted to an adjoining common or city school district or districts maintaining a school or to the district where a majority of the pupils of the disorganized district was attending school on November 1, 1950. In the event a county superintendent shall fail or refuse to issue the order disorganizing any such district, or to attach the territory of any such district to another district or districts prior to August 15, 1951, the state superintendent shall issue such orders of disorganization and attachment as may be necessary to carry out the provisions of this section."

Amended by Laws of 1953, Ch. 319, Sec. 2, now 1953 Supp. G. S. 1949, 72-831.

On April 1, 1951, common-school districts No. 90 and 114 of Dickinson county had not for more than 3 years immediately preceding September 1, 1950, maintained a school within their respective boundaries and were not maintaining such a school on that date. On April 9, 1951, Frank Correll, county superintendent of public instruction of Dickinson county, issued an order disorganizing common-school districts No. 90 and 114 of Dickinson county under the provisions of the statute just quoted, and gave the notices re-

quired by statute. On May 18, 1951, the school board of common-school district No. 90 of Dickinson county had a meeting at which all members attended and called a special election of the electors of the common-school district to designate to what district or districts the territory of such district should be attached, such election to be held at the schoolhouse in the district on June 4, 1951, at 2:00 o'clock p. m. The required notices were duly published; the meeting was held, and a majority of the electors voted to have the territory of their district attached to school district No. 113 of Dickinson county. Like action was taken in common-school district No. 114 with a like result. The clerks of these respective common-school districts notified the county superintendent of public instruction of Dickinson county of the result of said election. On June 26, 1951, the county superintendent of public instruction of Dickinson county issued an order attaching to Herington school district No. 113 of Dickinson county real estate which was formerly within common-school districts No. 90 and 114. Notices were duly posted in the respective districts and sent to the clerks of the district boards and copies were sent to the state superintendent of public instruction.

The county superintendent of public instruction of Marion county certified to the county clerk of Dickinson county to levy a tax for operation and maintenance of Lost Springs rural high school M and D No. 2 upon all the land that district had previously had in the common-school districts No. 90 and 114 in Dickinson county. The county superintendent of public instruction of Dickinson county certified the same identical property to the county clerk of Dickinson county upon which to levy a tax for operation and maintenance of the Herington school district No. 113 of Dickinson county. On July 1, 1951, the Herington school district No. 113 of Dickinson county took physical possession and control of the property of common-school districts No. 90 and 114.

On June 27, 1951, a petition signed by voters resident in the territory overlapped (as to taxes claimed by the two districts) was presented to the county superintendents of Marion and Dickinson county asking for the "detachment" of such overlapped territory from the rural high-school district. The usual local hearing on the petition took place, the county superintendents were divided in decision, and an appeal followed to the state superintendent. He

held a public hearing on the matter and on October 22, 1951, made a formal decision from which we quote as follows:

"Section 10, Chapter 396, Session of 1951, is regarded as fully controlling the disposal of all the territory of the two districts disorganized, No. 90 and No. 114. The procedure laid down in that section was accurately followed and the territory of these districts is now a part of the school territory of the city of Herington."

As to "detaching" the territory from Lost Springs rural high-school district to the Herington school district No. 113 of Dickinson county the state superintendent concluded that no statute gave him authority to make an order detaching or transferring the property.

This decision is helpful here for two things: first, it held that all of the territory of the two districts of No. 90 and 114 in Dickinson county is now a part of the school territory of the Herington school district No. 113 in Dickinson county; and second, it declined to make an order for detachment or transfer of the territory of the Lost Springs rural high-school district to the Herington school district No. 113 of Dickinson county for the simple reason that the legislature had not given the state superintendent authority to make such a detachment or transfer. We note that the legislature of 1953, Ch. 319, § 2, amending § 10 of Ch. 396 of the Laws of 1951 did give the state superintendent that authority but this was too late to be applicable here.

Following the decision of the state superintendent of October 22, 1951, this action was filed by the State upon the relation of the Attorney General in Dickinson county. Honorable James P. Coleman, presiding judge of the district court of Dickinson county, filed his disqualification to sit in the trial of the case and Honorable Marvin O. Brummett, judge of the district court of the 12th judicial district, was duly appointed as judge pro tem for the trial of the case. After a trial which went into all features of the case the trial court made detailed findings of fact and conclusions of law. We find it unnecessary to set these out in full but do set out the crucial conclusions of law as follows:

"That the orders of attachment made by the County Superintendent of Dickinson County, attaching the territories of Common School District No. 90 and Common School District No. 114 in Dickinson County, Kansas, to Herington School District No. 113, affected a detachment of such territory in said districts from Lost Springs Rural High School District M & D No. 2.

"Lost Springs Rural High School District M & D No. 2 has no control or

authority over the following described real estate, to-wit:" (The territory in question is described.)

"When the property, immediately hereinbefore described, became attached to Herington School District No. 113, it became detached from Lost Springs Rural High School District M & D No. 2.

"The levy made by the County Clerk of Dickinson County, Kansas, on the property hereinbefore described for the support and maintenance of Lost Springs Rural High School District M & D No. 2 is illegal and void and of no force and effect.

"Lost Springs Rural High School District M & D No. 2 should be and is hereby ousted from the exercise of authority or control, which includes the authority to levy and collect taxes for the maintenance of its high school, over the territory hereinafter described, to-wit:" (The territory in question is described.)

"Judgment should be and is hereby entered in favor of the plaintiff in conformity with these findings of fact and conclusions of law. Costs are assessed to the defendants."

In this court counsel for appellants (defendants below) discuss a number of questions pertaining to the action of the county superintendent of Dickinson county and the school boards of districts No. 90 and 114; the legal status of the members of the district boards; the calling of the election in each district, and the form of the ballots used. Each of these questions was raised in the trial court and decided adversely to appellants. While we have examined those questions and find no error in the ruling of the trial court respecting them we think they were not proper questions to be raised by defendants in the court below, or questions for review here for several reasons, only one of which we need to state: Namely, certain taxpayers complained to the county superintendents, as they had the right to do, and when they were of different opinions appealed to the state superintendent of public instruction, as they had the right to do under Ch. 396, § 17, Laws of 1951, now 72-838 of the 1953 Supp. to General Statutes of 1949. In that part of the decision of the state superintendent, not previously copied, we are told that the matter was argued before the state superintendent mostly on legal points without stating those legal points *seriatim,* and held: The procedure laid down in that section (Laws of 1951, Ch. 396, § 10) was accurately followed and the territory of these districts (No. 90 and 114) is now a part of the school territory of the city of Herington. The statute pertaining to these appeals, 72-838, *supra,* provides: ".. . . the decision of a state superin-

tendent shall be final." See, also, *State v. Miller*, 173 Kan. 516, 249 P. 2d 659.

Counsel for appellants also complain of the conclusions of law by the trial court that the orders of attachment made by the county superintendent of Dickinson county attaching the territories of common-school districts No. 90 and 114 of Dickinson county to the Herington school district No. 113 effected a detachment of such territory in the districts from Lost Springs rural high-school district M & D No. 2, and other conclusions of the court which necessarily followed from this. We regard this as the only real question in this case. The effect of this holding, of course, is that the property in question cannot be taxed for the support and maintenance of the rural high school but can be taxed for the support and maintenance of the Herington High School No. 113 which operates both an accredited high school and grade schools. It is correctly pointed out that Ch. 396, Laws of 1951, pertains only to common schools and we also point out that § 10 of that act is the only one that pertains to this disorganization of common-school districts which have not maintained schools for as long as 3 years. It may be conceded that the section does not deal with the situation where a part or all of the territory of such a disorganized school is within a rural high-school district and the property is transferred to another district which maintains a high school. This fact is not a complete answer to the question before us. In *Bunning v. Rural High-school District*, 105 Kan. 320, 182 Pac. 387, where there was a similar question the court stated, p. 323: ". . . We can hardly attribute to the legislature a purpose that the people of the attached territory should be required to help maintain two high schools, one in the city, and one outside of the city. . . ."

Counsel for appellant argued that even though the disorganized common-school districts were attached to Herington district No. 113 of Dickinson county that fact alone did not effect a detachment of the territory from the Lost Springs rural high-school district. It is true that no statute makes that specific provision in situations such as we have here but it is also true that no statute denies such result. In *State, ex rel., v. Board of Education*, 128 Kan. 487, 278 Pac. 741, which involved a similar situation and where the same argument was made as is made here, this court denied that contention and at p. 491 said:

". . . If territory be added to the school district of a city of the first class it must of necessity be taken from some other school district. . . ."

In *State, ex rel., v. Board of Education*, 173 Kan. 780, 252 P. 2d 859, it was said in the opinion p. 791:

"Plaintiff also appears to argue that one school district is not permitted to attach the property of another district. This cannot be true. Every foot of territory is within some school district. The result is that the attachments of territory to any school district must involve the territory of some existing school district. It is well established by a long line of decisions that there are no vested rights in the existence of a school district and that the legislature has authority to extend or limit its boundaries, consolidate two or more as one, or to abolish a district altogether."

Citing, *State, ex rel., v. School District*, 163 Kan. 650, 185 P. 2d 677, which cited *State, ex rel., v. Board of Education*, 128 Kan. 487, 278 Pac. 741. To the same effect is *State, ex rel., v. Board of Education*, 173 Kan. 780, 252 P. 2d 859.

The effect of each of these cases is that when territory of one school district is lawfully attached to another, such attachment, unless limited by statute, is for all purposes even though the territory so attached may be included in some type of high school district.

Other cases might be discussed involving various features of our school laws with respect to the territory of school districts, each dealing with situations somewhat different than the one before us, but we think it not necessary to do so. We agree with the state superintendent in holding that Laws 1951, Ch. 396, § 10, is fully controlling in the disposition of the territory of the disorganized districts No. 90 and 114 of Dickinson county. In fact, it is the only section of our statute specifically dealing with the disorganization of common-school districts for the reason that no school has been held in the district for as much as 3 years. We concur also with the conclusion of the state superintendent of public instruction that the procedure laid down in that section was accurately followed, and in his further holding that the territory of these districts is now part of the school territory of the school district of the city of Herington No. 113 in Dickinson county. There is no statute dealing with the subject of what, if anything, should be done with that part of such territory which was also in the Lost Springs rural high-school district, but since that territory was placed in the territory of the Herington school district which maintains an accredited high school, as well as grade schools, and makes but one levy for

the maintenance and support of such schools, and since we cannot attribute to the legislature the intention that the portion of the territory of the rural high school which was within the two districts which were disorganized would pay a double high school tax, we feel compelled to agree with the trial court that the attachment of that territory to the Herington high-school district effected a detachment of it from the Lost Springs rural high school.

There isn't much else in this lawsuit. We have studied the record carefully and have examined all the authorities cited by counsel and find no error in the record. The judgment of the trial court is affirmed.